# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARED MASSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-1233-R |
| | ) |
| FLOWERS FOODS, INC., and FLOWERS | ) |
| BAKING CO. of DENTON LLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 5) and Brief in Support (Doc. 6). Plaintiff has responded (Doc. 20). For the reasons that follow, that Motion is DENIED. Plaintiff will be GRANTED LEAVE TO AMEND.

## I. Background

Plaintiff Jared Massey has sued his employer, Defendant Flowers Baking Co. of Denton LLC, and its parent corporation, Flowers Foods, Inc. (together, "Flowers") under several state and federal laws for Flowers's treatment. Flowers is one of the nation's largest producers of packaged bakery foods in the nation, with familiar brands such as Nature's Own, Wonder, Sunbeam, Pride, and Tastycake. The company ships its products to distribution and warehouse facilities, from which individual distributors, like Mr. Massey, pick up and deliver the products to stores across the region. (Doc. 1, at 2).

Mr. Massey first began working as a distributor for Flowers in June 2013 through the company's Oklahoma City warehouse. (Doc. 1, at 6). For the next few months, as Mr.

1

Massey picked up, delivered, and stocked bakery and snack food at stores across the metro, Flowers classified him as a "Prospective Distributor," which the company allegedly does for all new hires. As a Prospective Distributor, Mr. Massey qualified as a regular employee under the FLSA, meaning he received typical benefits such as overtime pay from Flowers for when he worked more than 40 hours per week. The FLSA requires employers to compensate their employees "for a workweek longer than forty hours . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1).

Flowers, however, eventually transitions these Prospective Distributors into Independent Distributors, essentially independent contractors, by giving its employees an option: face termination or purchase the rights to a designated delivery-route by signing a Distributor Agreement. (Doc. 1, at 3). Mr. Massey received this choice in February 2014 from Lance Stevens, a sales manager for Flowers. Stevens allegedly explained that signing the Distributor Agreement would not only allow Mr. Massey to continue working for Flowers, but would also bring higher pay, the authority to dictate his own schedule, and the exclusive right to deliver Flowers products to stores in a pre-determined area. (*Id*).

So Mr. Massey signed and thus became an Independent Distributor. His job duties remained largely the same: he picked up Flowers products from the Oklahoma City warehouse, transported them to retail locations, and organized them on the stores' shelves per Flowers's instructions. The Distributor Agreement, though, did not bring the expected level of authority Stevens had allegedly promised. The Agreement apparently dictated the price of products he would deliver, limited which stores could receive Flowers products,

and reserved Flowers's right to change any orders placed by distributors such as Mr. Massey. *Id*. Further, Mr. Massey remained eligible to receive one of Flowers's "10-Day Breach Letters," which the company allegedly sends to distributors who have failed to perform under the terms of their Distributor Agreements. Distributors are given 10 days to resolve the problems laid out in the Breach Letters, with failure to do so resulting in Flowers terminating the distributor's contract or purchased route.

There was, however, one more consequential change under the Agreement: Mr. Massey was now an independent contractor—meaning Flowers no longer considered him a regular employee. The company allegedly stopped compensating him based on total hours worked and instead began calculating his pay based on the amount of product he sold. (*Id*. at 4). Now, Mr. Massey was allegedly working 70 to 80 hours per week without receiving overtime pay or other regular-employee benefits. (*Id*. at 7).

It was after Mr. Massey became an Independent Distributor that his problems allegedly began to arise. First, Mr. Massey apparently learned in late 2014 that his exclusive delivery route was not so exclusive after all; Flowers had apparently contracted with another individual, Jerry Lester, to deliver to one of Mr. Massey's stores. Mr. Massey protested, but Flowers told him "not to worry about it" and that if he did not like Flowers's decision, others would be happy to have Mr. Massey's job.

Then, in December 2015, Flowers allegedly approached Mr. Massey with a proposed amendment to his contract. Flowers was allegedly staring down FLSA-class-actions from independent contractors across the nation, and in an effort to stave off litigation, Flowers was asking its distributors to sign an addendum to their contract waiving

3

any right to participate in a class action against the company. (*Id.*, at 8). When several distributors including Mr. Massey refused to sign, Flowers sent out several of its 10-Day Breach Letters.

Mr. Massey's problems persisted. He learned in August 2016 that another distributor, this time Jerry Haines, had been delivering product on Mr. Massey's route since June 2014. By itself, this does not appear to have bothered Mr. Massey much: the store, a Big Lots, was a "low-volume, high labor stop," apparently resulting in added labor for the distributor with little pay out. (*Id.*, at 9). Now, however, Lance Stevens told Mr. Massey that he needed to service this store—despite Flowers not having disclosed the existence of this store when it originally sold Mr. Massey his route. This led to an unsuccessful attempt by Mr. Massey to obtain an official list of the stores in his area. (*Id.*)

Proceeding pro se, Mr. Massey filed this suit alleging 13 causes of action. He has now dismissed several of them, leaving only his claims for (1) violations of the FLSA; (2) violation of the Oklahoma Minimum Wage Act; (3) violations of the Family Medical Leave Act; (4) common law fraud; (5) negligent misrepresentation; (6) unjust enrichment; (7) money had and received; (8) false imprisonment; and (9) breach of contract. Defendants have moved to dismiss the claims for FLSA retaliation and fraud.[1]

## II. Standard on a Motion to Dismiss

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v.*

---

[1] Flowers moved to dismiss several other claims, but as explained below, Plaintiff has now abandoned those claims, making certain portions of Flowers's Motion moot.

4

*Iqbal*, 556 U.S. 662, 677–78 (2009). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a pleading must offer more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. There must be "sufficient factual matter, [which if] accepted as true . . . state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim is one that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must "nudge[] his claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. Further, the Court "must accept all the well-pleaded allegations of the complaint . . . and must construe them in the light most favorable to the [non-moving party]." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).

Further, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[P]ro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings," *Id.* at 1110 n.3, particularly "where justice so requires." *Roman-Nose v. New Mexico Dept. of Human Servs.*, 967 F.2d 435, 438 (10th Cir. 1992).

### III. Discussion

**A. FLSA Claims**

5

Flowers first moves to dismiss Mr. Massey's FLSA retaliation claim on the basis that he has failed to sufficiently plead a prima facie case. The FLSA makes it unlawful for an employer to retaliate against an employee who engages in any of the following protected acts: (1) filing a complaint against an employer; (2) instituting a procedure against an employer under the FLSA; or (3) testifying in any proceeding brought under the FLSA. 29 U.S.C. § 215(a)(3). Further, the provision protects both oral and written complaints to an employer. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011).

Contrary to Flowers's contention, a failure to plead a prima facie FLSA retaliation claim does not in itself warrant dismissal: the "12(b)(6) standard does not require that a plaintiff establish a prima facie case in [his] complaint." *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 932 (10th Cir. 2015) (unpublished) (internal brackets omitted) (citing *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012). That said, looking for whether a plaintiff has pled the elements of a retaliation claim will "help to determine whether [he] has set forth a plausible claim." *Id*. Consequently, determining whether a complaint states a plausible claim for relief begins with "discussing the elements a plaintiff must prove to establish a claim for [retaliation]." *Id*.

Because FLSA retaliation claims are subject to the McDonnel Douglas burden-shifting framework, a litigant establishes a prima facie case by demonstrating: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the first two elements. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004).

As evidence of his participation in a protected activity, Mr. Massey points to his refusal to waive his rights to participate in a class action. He argues that because independent contractors were instituting class actions against Flowers around the country for the company's alleged misclassification of them, Flowers, in hopes of avoiding yet another class action suit, tried to coerce Plaintiff into signing a class-action waiver. (Doc. 1, at 26).

The question is whether Plaintiff's refusal to sign the waiver constituted protected activity. To fall within the protection of the FLSA's anti-retaliation provision, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 1335, 179 L. Ed. 2d 379 (2011). Flowers argues this refusal to sign the waiver could not have been reasonably understood as signaling an objection to Flowers' FLSA compliance.

The Court tends to agree with the Defendants. Based on Mr. Massey's refusal to waive his class-action rights, it is not sufficiently clear from the Complaint that this was protected activity: a refusal to sign away class-action rights could mean any number of things. It would not necessarily imply that Mr. Massey planned to participate in an upcoming class action. And how Flowers's would necessarily know that Mr. Massey's refusal to sign was in protest to its overtime-pay policy is even less clear. Given this, Mr. Massey has failed to state a claim for retaliation under the FLSA.

**B. Fraud Claims**

Flowers' second contention is that Mr. Massey's allegations of common law fraud fall far short of Federal Rule of Civil Procedure 9's heightened pleading standard for fraud claims. "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud," including "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotes and citations omitted).

Mr. Massey points to two instances of fraud: Flowers (1) promising him that he would be able to operate his own business with significantly more authority under the Distributor Agreement and (2) failing to disclose two low-volume, high-labor stores included in Mr. Massey's designated territory. Both allegations, however, suffer from the same lack of particularity required to state a claim under Rule 9(b).

Regarding the first claim concerning Flowers's alleged promises about Mr. Massey's authority under the Distributor Agreement, Mr. Massey fails to identify who made the fraudulent statement, at what time, and at what place. The entirety of his allegation is that Defendants lied to him by telling him that he would have virtually no oversight and the ability to control his own schedule and route under the Distributor Agreement. This falls far short of Rule 9(b)'s standard. "[Mr. Massey] simply speculate[s] that defendants and/or their agents collectively engaged in various instances of wrongdoing that eventually culminated in" Massey not having the promised authority under the Distributor Agreement. *Jensen v. Am.'s Wholesale Lender*, 425 F. App'x 761, 763 (10th Cir. 2011) (affirming dismissal of pro se litigant's fraud claim). "While this might suggest

'that some plaintiff could prove some set of facts in support of the pleaded claims, ... the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'" *Id*. (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Mr. Massey's second allegation of fraud suffers from the same defects. He alleges, in generalities, that Flowers intentionally failed to disclose the existence of two other "low-volume, high-labor" stores in his territory, thereby allowing other distributors to distribute within his exclusive area of operation. Flowers, in other words, induced Mr. Massey into buying his distributor route without a full picture of which stores that route included.

Much of the parties' briefing on this claim surrounds whether Flowers's alleged *failure* to disclose constitutes fraud—which, as Flowers correctly points out, typically requires a positive assertion. *See Bowmann v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009). Yet Mr. Massey is correct that are certain instances in which Oklahoma law will impose a duty to disclose, such as where "the defendant knows the fact is peculiarly within his knowledge and the other person is not in a position to discover the fact for himself." *See Kiefner v. Sullivan*, 2014 WL 2197812, at *12 (N.D. Okla. May 27, 2014). This would seem to be such a scenario. But at any rate, Mr. Massey again fails to plead the who, where, and when of his fraud claim as required by Rule 9.

**C. Leave to Amend**

Though the Court finds that Mr. Massey has failed to state a claim for FLSA retaliation and fraud, it will grant leave to amend. "[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on

the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010). "[T]he plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Id.* (noting that though "only a few of the complaint's 154 paragraphs state plausible claims for relief under *Twombly* and *Iqbal* . . . the district court . . . should have afforded [Plaintiff] the opportunity to amend his complaint before dismissing every claim with prejudice").

Regarding Mr. Massey's FLSA claim, if—as he alleges—he actually "made Defendants aware" of his displeasure toward their failure to pay him overtime wages and they subsequently retaliated (Doc. 1, 13), it is at least plausible that Mr. Massey could prevail on those facts. As for his fraud claims, if the alleged statement and failure-to-disclose actually occurred, he could easily remedy these pleadings by plugging in the technical details required by Rule 9. Mr. Massey is thus granted leave to amend his FLSA and fraud claims.

**Conclusion**

To sum, Flowers' Motion to Dismiss (Docs. 5 & 6) is DENIED to the extent that the Court will grant Mr. Massey leave to amend his claims for FLSA retaliation and fraud. The Motion is DENIED as moot to the extent it seeks dismissal of Mr. Massey's claims for defamation, intentional infliction of emotional distress, civil conspiracy, negligent hiring, and attorney's fees. Mr. Massey has dismissed those claims and is no longer pro se, making a request for attorney's fees proper. Mr. Massey should amend his claims within 21 days of this Order and in accordance with the pleading requirements of Rules 8 and 9.

IT IS SO ORDERED this 21st day of April 2017.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE